IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STEVE HARRIS                                          PLAINTIFF


VS.                            CIVIL ACTION NO. 3:07-cv-366-WHB-LRA


MISSISSIPPI TRANSPORTATION COMMISSION                          DEFENDANT


<u>OPINION AND ORDER</u>

This cause is before the Court on the Motion of Defendant for
Final Summary Judgment.  The Court, having considered the Motion,
Response, Rebuttal, attachments to the pleadings, as well as
supporting and opposing authorities finds that the Motion is well
taken and should be granted.


## I.  Factual Background and Procedural History

Plaintiff, Steve Harris ("Harris"), an African-American, was
hired by Defendant, the Mississippi Transportation Commission
("MTC") on February 16, 1990.  Prior to his termination, Harris was
employed as an Engineering Technician II, and his primary duty was
to inspect road construction projects performed by private
contractors.  On October 25, 2004, Harris filed a Charge of
Discrimination with the EEOC, alleging discrimination on the basis
of race.  In his Charge, Harris alleged that he had not been
promoted and had been unfairly disciplined because of his race, and
that he had overheard his supervisors making racially-oriented
slurs and comments.

On December 14, 2004, Harris was suspended with pay pending an investigation by the Mississippi Department of Transportation ("MDOT"). Through the Suspension With Pay Notice, Harris was informed that he would later be notified of the charges that had been made against him, and that he would be given an opportunity for a hearing within twenty working days. Harris was also instructed to not return to the workplace, and to surrender all MDOT property including his identification card.

On December 21, 2004, Harris received a Pre-disciplinary Action Notice from Hearing Officer John Head ("Head"). Through this Notice, Harris was informed that a decision regarding whether any action would be taken against him would be made on or about January 13, 2005, and that such action could include being reprimanded, suspended, demoted, or terminated. Harris was also notified that disciplinary action was being considered based on allegations that he had solicited bribes and had been insubordinate/ threatened his supervisor.

The solicitation of bribes charge against Harris was predicated on the following events. According to Harris's supervisor Steve Johnson ("Johnson"), in September 2004, he met with Brian Hodges ("Hodges"), the President of Hodges, Inc., whose company had been sub-contracted to work on a road construction project in Carroll County, Mississippi. During this meeting, Hodges allegedly raised questions regarding two MTC employees who

had inspected the work performed by Hodges, Inc., between December of 2001, and June of 2002. Specifically, Hodges claimed that on one occasion his firm had worked a construction project on Sunday without permission. On the following day he was told by Maverick Hughes ("Hughes"), an MTC inspector, that Hodges, Inc., would not be paid for the work that had been done on Sunday because an inspector had not been present to inspect the work. According to Hodges, later that day Hughes and another African-American MTC inspector told him that he could make his problem "go away", i.e. be paid for the work that had been done on Sunday, in exchange for cash. Hodges also stated that Hughes and the other African-American MTC inspector had asked him and his employees for bribes on numerous occasions.

Following this conversation, Johnson asked Hodges to submit a written statement setting forth his allegations, and indicated that an investigation would be conducted after the written statement was received. Hodges's notarized written statement was received on or about November 30, 2004. Thereafter, Johnson reviewed the Daily Reports and the Inspector's Daily Reports for the construction project on which Hodges, Inc., had worked, and determined that Harris was the only other African-American MTC inspector that had inspected the work performed by Hodges, Inc., during the relevant time period. According to Johnson, based on his review of the Daily Reports/Inspector's Daily Reports, he determined that Harris

was the "other African-American inspector" who had solicited bribes from Hodges, Inc.

Head informed Harris that if the allegations regarding the solicitation of bribes charge were found to be true, the charge constituted two Group 3 offenses: (1) "An act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees" and (2) "Willful violation of State Personnel Board policies, rules and regulations as stipulated in the Mississippi State Employee Handbook, Section 10.0 (C-11) and (C-16)."

The second charge against Harris was based on an incident that occurred on December 2, 2004. According to the Pre-disciplinary Action Notice, on that date Johnson denied Harris's request for time off. Thereafter, Johnson told Harris and a co-employee to not leave the office without first checking with a supervisor regarding their assignments for that day. According to the Notice, Harris immediately became loud, unruly, and hostile towards Johnson, despite repeated requests to calm down. Additionally, when Harris was told that he would be "written up for insubordination" if he did not calm down, Harris allegedly told Johnson, with clenched fists, "You are going to make me ..." several times before leaving the building.

Head informed Harris that if the allegations regarding the threat charge were found to be true, the charge constituted two Group 3 offenses: (1) "Threatening or coercing employees, supervisors, or business invitees of a state agency or office, including stalking" and (2) "An act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees" as stipulated in the Mississippi State Employee Handbook, Section 10.0(C-9) and (C-11). The Pre-disciplinary Action Notice also cited four other occasions on which Harris was reprimanded and suspended between June 6, 2002, and September 27, 2004, for offenses including use of obscene and offensive language, insubordination, resisting management directives, threatening or coercing employees, failure to report to work, and/or leave usage without justifiable or reasonable excuse.

By the Pre-disciplinary Action Notice, Harris was directed to appear at a Pre-disciplinary Conference on January 13, 2005, and was advised that he could submit a written response to the charges that had been alleged against him. On January 20, 2005, Head submitted a letter to Larry L. Brown, Sr. ("Brown"), Executive Director of MDOT, setting forth his findings from the January 13, 2005, Pre-diciplinary Conference, and concurring with the district

engineer's request that Harris be terminated.  As indicted in his letter, Head found:

> The most serious allegation against Mr. Harris, the solicitation of kickbacks from contractors, pits Mr. Harris's word against that of Mr. Brain Hodges, the CEO of Hodges, Inc.... Mr. Hodges has supplied a signed and notarized statement that Mr. Maverick Hughes and one of his associates approached him and several of his supervisors for money to resolve potential problems on the project.  Mr. Harris is never mentioned by name in Mr. Hodges's statement, but according to a memorandum in the case file by Mr. Steve Johnson, the project officer engineer, Mr. Harris is the only other MDOT employee who was assigned to this particular project.... Mr. Harris vehemently denies these charges, insisting that he never allows contractors to even buy him a coke or soda pop. When asked why Mr. Hodges would single him out, Mr. Harris's response was that he didn't know why he would "tell that lie on me."
>
> Mr. Brian Hodges is risking his professional reputation and the future of his business in making these charges of solicitation of kickbacks by MDOT employees.  These charges will result in intense investigations by other outside agencies and, if proven false, could result in severe penalties for him and his company.  Given the stakes involved, I believe that Mr. Hodges's statement is more credible than the denials by Mr. Harris.  Mr. Harris was the only other employee assigned to the project, so that if solicitations took place, he was involved.  I find him guilty of two (2) Group Three Offenses:  An act or acts of conduct occurring on or off the job, which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees; and Willful violation of State Personnel Board policies, rules and regulations as stipulated in the Mississippi State Employee Handbook, Section 10.0 (C-11) and (C-16).
>
> The other allegations surround Mr. Harris's confrontation with his supervisor, Mr. Steve Johnson, Winona Project Engineer.  A review of the case file and the statements by those present in the office at the time of this confrontation make clear that, while the details recalled by the witnesses vary somewhat, depending on their

location in the office, a heated exchange did occur between Mr. Harris and Mr. Johnson. According to the case file, no one else heard Mr. Harris make the statement to Mr. Johnson, with his fists clenched, that "You are going to make me ... you are going to make me ..." However, it is clear from all the statements that a loud, hostile, and argumentative confrontation took place. Mr. Harris has been cited several times for similar confrontations. On September 27, 2004, he was issued a written reprimand and suspended for five (5) days for a Group One Offense of Obscene or abusive language and a Group Two Offense for Insubordination... On April 9, 2002, he was issued a written reprimand and suspended for 10 days for a Group One Offense of Obscene or abusive language and two Group Three Offenses of Threatening or coercing employees, supervisors, or business invitees of a state agency or office. On June 6, 2000, Mr. Harris was issued a written reprimand and suspended for five (5) days without pay for one Group One Offense of Obscene or abusive language and one Group Three Offense of Threatening or coercing employees, supervisors, or business invitees of a state agency or office. These disciplinary actions clearly show a pattern for angry, hostile confrontations by Mr. Harris. I believe him to be guilty of the Group Three Offense of Threatening or coercing employees, supervisors, or business invitees of a state agency or office. The district engineer has requested that Mr. Harris be terminated. Given his disciplinary history, and the seriousness of the charges made against Mr. Harris, I concur with this request.

On January 21, 2005, Harris was issued a Disciplinary Action Notice informing him that his employment would be terminated, effective January 31, 2005, based on the solicitation of bribes charge, and the insubordination/threat charge as alleged in the Pre-disciplinary Action Notice. On March 7, 2005, Harris filed an Amended Charge of Discrimination with the EEOC, alleging that he was discriminatorily disciplined and discharged because of his race. Harris filed a second Amended Charge of Discrimination with the EEOC on March 15, 2005, alleging a claim of retaliation.

On September 7, 2006, the EEOC issued a Determination Notice. In the Determination Notice, EEOC Area Director Wilda Scott ("Scott") indicated:

> I have determined that the evidence obtained in the investigation established reasonable cause to believe that [Harris] was discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended, in that [he] was singled out for criticism and discharged from his position in retaliation for opposing an unlawful employment practice. The documentary evidence disclosed that [Harris] did not have a problem with his employment prior to filing a discrimination charge with the Commission against the Respondent.
>
> Evidence disclosed that after [Harris] filed his first EEOC charge ..., a subcontractor notified the Respondent in an affidavit, Dated January 28, 2005, that an employee and a co-worker had solicited kick-backs from him to ensure that the work performed passed inspection. In his affidavit, the sub-contractor cited that the incident occurred while he was performing work on a project from December 2001 and May 2002. The sub-contractor specifically provided the name of the employee who had solicited kick-backs from him to the Respondent but failed to name the co-worker. The evidence disclosed that the Respondent without an investigation or corroborating evidence and only after [Harris] filed his charge concluded that [Harris] was the co-worker and discharged him from his position. A reasonable trier of the facts would find that Respondent's decision to discharge [Harris] was more likely than not linked to his protest of a protected activity.

On or about February 5, 2007, Harris received a letter from the EEOC informing him conciliations efforts had been unsuccessful, and advising him that he had ninety in which to commence a civil action against his employer if he so chose. On or about May 3, 2007, Harris filed a lawsuit against the MTC in the Circuit Court for the First Judicial District of Hinds County, Mississippi,

alleging claims of discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964, discrimination on the basis of race in violation of 42 U.S.C. § 1981, and state law claims of tortious interference of prospective business advantage and intentional and/or negligent infliction of emotional distress. The case was removed to this Court on June 28, 2007, and as Harris has alleged claims arising under federal law, the Court may properly exercise federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. On June 17, 2008, the parties entered a stipulation by which all but Harris's claim of retaliation in violation of Title VII were withdrawn. The MTC has now moved for summary judgment on Harris's remaining retaliation claim.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-

Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III. Legal Analysis

Harris has alleged a claim of retaliation in violation of Title VII. In order to survive summary judgment on such claim, Harris must make a prima facie showing: "'(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'" Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) (quoting Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002)). In the case *sub judice*, the record shows that Harris filed a Charge of Discrimination with the EEOC on October 25, 2004, and that he was terminated from his employment effective January 31, 2005, thereby satisfying the first two elements of his prima facie case. See Evans v. City of Houston, 246 F.3d 344, 352-53 (5th Cir. 2001) (finding that "[i]f an employee has 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII,' the employee has engaged in a protected activity.") (citations

omitted); Banks, 320 F.3d at 575 (holding that "'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating' satisfy the adverse employment action element" of a prima facie case of retaliation) (quoting Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995)). The Court additionally finds that the temporal proximity between the date on which Harris filed his Charge of Discrimination and the date on which he was terminated is sufficient to satisfy the "causal link" requirement for establishing a prima facie case of retaliation. See e.g. Swanson v. General Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) (finding that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the "causal connection" required to make out a prima facie case of retaliation.") (citations omitted); Evans, 246 F.3d at 354 (finding that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.") (citations omitted).

As Harris has satisfied his burden of establishing a prima facie case of retaliation under Title VII, the burden now shifts to the MTC "to demonstrate a legitimate nondiscriminatory purpose for the employment action."[1]  Gee v. Principi, 289 F.3d 342, 345 (5th

---

[1]  See Septimus v. University of Houston, 399 F.3d 601, 608 (5th Cir. 2005)(holding that "[T]he McDonnell Douglas evidentiary framework applies to Title VII retaliation claims brought under a pretext theory.").

Cir. 2002) (quoting <u>Aldrup v. Caldera</u>, 274 F.3d 282, 286 (5th Cir. 2001)).  In addition, in cases in which a close temporal proximity exists between the protected activity and the adverse employment action, the employer must explain the timing of its actions.  <u>See</u> <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 408 (5th Cir. 1999) ("[T]his circuit has held that where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer 'a legitimate, nondiscriminatory reason that explains both the adverse action and the timing.'") (quoting <u>Swanson</u>, 110 F.3d at 1188).

In the case *sub judice*, the MTC contends that Harris was terminated for soliciting bribes and for insubordination/making threats against his supervisor.  <u>See</u> Mot. for Final Summ. J. [Docket No. 53], Ex. 9 (Pre-disciplinary Action Notice)(indicating that disciplinary action was being contemplated based on allegations that Harris had solicited bribes and had been insubordinate/threatened his supervisor); Ex. 11 (Disciplinary Action Notice)(indicating that Harris was terminated for having solicited bribes and for insubordination/threatening his supervisor).  The Court finds that the reasons articulated by the MTC constitute legitimate, non-discriminatory reasons for terminating Harris's employment.  <u>See</u> <u>e.g.</u> <u>Burrell v. Dr.</u> <u>Pepper/Seven Up Bottling Group, Inc.</u>, 482 F.3d 408, 416 (5th Cir. 2007) (finding that insubordination constitutes a legitimate, non-

discriminatory basis for termination under Title VII); <u>Turner v.</u>
<u>Baylor Richardson Med. Ctr.</u>, 476 F.3d 337, 346-47 (5th Cir. 2007)
(finding that the defendant had stated a legitimate, non-
discriminatory reason for termination in a case in which the
plaintiff was terminated for poor work performance and
insubordination).

The Court also finds that the record establishes a legitimate,
nondiscriminatory reason that explains the <u>timing</u> of Harris's
termination. For example, according to his affidavit, Johnson
avers that while Hodges verbally informed him of the bribe
solicitations in September of 2004, Hodges's allegations were not
investigated until his notarized written statement regarding those
allegations was received on or about November 30, 2004. <u>See</u> Mot.
for Final Summ. J., Ex. 1 (Johnson Aff.), at ¶¶ 8, 13, 14.
According to Johnson, after receiving Hodges's notarized statement,
he reviewed the Daily Reports/Inspector's Daily Reports and
determined that Harris was the "other African-American inspector"
referred to by Hodges because he was the only other African-
American inspector who had inspected the work performed by Hodges's
Inc., during the relevant time period. <u>Id.</u>, Ex. 1, at ¶ 14. Thus,
the record shows that the investigation by which Harris was
identified as the "other African-American inspector" referred to by
Hodges, and on which the charge of solicitation of bribes was
predicated, did not occur until after the date on which Harris

filed his initial Charge of Discrimination with the EEOC.  See id.
Ex. 1, at ¶¶ 13, 14.  See also id. Ex. 9 (Pre-disciplinary Action
Notice); Ex. 11 (Disciplinary Action Notice).  Likewise, as regards
the insubordination/threat charge for which Harris was terminated,
the record shows that the incident underlying this charge occurred
on December 2, 2004, which again is after the date on which Harris
filed his initial Charge of Discrimination with the EEOC.  See id.
Ex. 1, at ¶¶ 15, 16.  See also id. Ex. 9 (Pre-disciplinary Action
Notice); Ex. 11 (Disciplinary Action Notice).  As the record
clearly establishes that the reasons articulated for Harris's
termination did not arise until after the date on which he filed
his Charge of Discrimination with the EEOC, the Court finds that
there exists a legitimate, nondiscriminatory reason that explains
both Harris's termination and the timing of his termination.

As the MTC has stated a legitimate, non-discriminatory reason
for Harris's termination, the burden now again shifts to Harris who
has "the ultimate burden of proving that the employer's proffered
reason is not true but instead is a pretext for the real ...
retaliatory purpose." McCoy v. City of Shreveport, 492 F.3d 551,
557 (5th Cir. 2007).

> 'To carry that burden, the plaintiff must produce
> substantial evidence of pretext.' Auguster v. Vermilion
> Parish Sch. Bd., 249 F.3d 400, 402 (5th Cir. 2001). The
> plaintiff must put forward evidence rebutting each of the
> nondiscriminatory reasons the employer articulates. See
> Rubinstein v. Administrators of Tulane Educational Fund,
> 218 F.3d 392, 400-01 (5th Cir. 2000); Rutherford v.
> Harris County, Tex., 197 F.3d 173, 184 (5th Cir. 1999);

see also Clay v. Holy Cross Hosp., 253 F.3d 1000, 1007
(7th Cir. 2001) (a plaintiff "must present facts to rebut
each and every legitimate non-discriminatory reason
advanced by [her employer] in order to survive summary
judgment"). A plaintiff may establish pretext 'by
showing that a discriminatory motive more likely
motivated' her employer's decision, such as through
evidence of disparate treatment, 'or that [her
employer's] explanation is unworthy of credence.'
Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d
581, 589 (5th Cir. 1998).

Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001)

(alterations in original). Thus, under controlling Fifth Circuit

precedent, Harris must prove "that 'but for' the discriminatory

purpose he would not have been terminated." Pineda v. United

Parcel Serv., Inc., 360 F.3d 483, 487 (5th Cir. 2004) (citing

Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 685 (5th Cir. 2001)

(Plaintiff "must demonstrate that he would not have been terminated

'but for' engaging in the protected activity."), and Long v.

Eastfield College, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("[E]ven if

a plaintiff's protected conduct is a substantial element in a

defendant's decision to terminate an employee, no liability for

unlawful retaliation arises if the employee would have been

terminated even in the absence of the protected conduct.")).

In response, Harris first argues that he can show pretext

because "other white employees received gifts from contractors and

were not terminated." See Resp. to Mot. for Final Summ. J. [Docket

No. 66], (citing Exs. C and E). The Court finds that this evidence

fails to create a genuine issue of material fact. Specifically,

for Harris to establish pretext by disparate treatment, he "must demonstrate that the misconduct for which he was discharged was nearly identical to that engaged in by an employee not within his protected class whom the employer retained." Wallace, 271 F.3d at 221 (alterations in original) (citations omitted). Accepting the above referenced evidence in the light most favorable to Harris, the Court finds that it shows that white MTC employees were not terminated for accepting gifts from contractors. It does not, however, establish that other MTC employees were retained after soliciting bribes or for engaging in repeated instances of insubordination, which are the charges underlying Harris's termination. As the misconducted cited by Harris, i.e. accepting gifts from contractors, is not "nearly identical" to that for which he was terminated, the Court finds that that evidence does demonstrate disparate treatment. Additionally, the Court finds that the subject evidence does not establish that Harris would not have been terminated for soliciting bribes or for insubordination/threatening his supervisor 'but for' the fact that he filed a Charge of Discrimination with the EEOC.

Next, Harris argues that he can establish pretext as he denies attempting to solicit bribes from Hodges's, Inc., he denies threatening or acting insubordinate to his supervisor, and he offered to take a lie detector test regarding these allegations. See Pl.'s Mem. in Resp. to Mot. for Final Summ. J., at 5 (citing

Ex. H (Harris Second Dep.). The Court finds that Harris's denials of the misconduct underlying the decision of the MTC to terminate his employment do not create a genuine issue of material fact on the issue of pretext.[2] <u>See</u> <u>e.g.</u> <u>LeMaire v. Louisiana Dept. of Transp. and Dev.</u>, 480 F.3d 383, 391 (5th Cir. 2007) (explaining: "Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions.... Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones."). <u>See</u> <u>also</u> <u>id.</u> (finding, in a case in which there were differing factual accounts regarding the charges underlying the employee's termination, that "[d]espite the employee's denial of these actions, we will not second-guess [his] employer's decision to

_____

[2]  In this Circuit, if a plaintiff "intends to show that the [defendant's] explanation is so unreasonable that it must be pretextual, it is [the plaintiff's] burden to proffer evidence creating a fact issue regarding reasonableness." <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 899 (5th Cir. 2002).  In the case *sub judice*, as regards Harris's termination for soliciting bribes, the record shows that the charge was based on the verbal and notarized statements of Hodges discussing the solicitations, Johnson's investigation of the Daily Reports/Inspector's Daily Reports by which Harris was identified as the only other African-American MTC inspector that had inspected the work performed by Hodges, Inc., during the relevant time period, and the findings made by Head during the January 13, 2005, Pre-disciplinary Conference.  As regards the insubordination/threatening his supervisor charge, the record shows that the charge was based on the statements of his supervisor, the statements of three co-workers who were in the vicinity at the time of the incident, and the findings made by Head during the January 13, 2005, Pre-disciplinary Conference.  Harris has not presented any evidence to show that it was unreasonable for the MTC to rely on these statements/findings when deciding to terminate his employment.

disbelieve [his] explanation, given the conflicting factual accounts. <u>Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext</u>.") (emphasis added). <u>See also</u> <u>Little v. Republic Refining Co., Ltd.</u>, 924 F.2d 93, 97 (5th Cir. 1991) (finding that "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification.").

Finally, Harris argues that he can establish pretext based on the probable cause determination made by the EEOC.[3] The United States Court of Appeals for the Fifth Circuit has held that EEOC determinations of probable cause, because of their probative value in employment discrimination cases, may constitute admissible evidence in such cases. <u>See</u> <u>e.g.</u> <u>Peters v. Jefferson Chem. Co.</u>, 516 F.2d 447, 450 (5th Cir. 1975). The Court, however, retains discretion under Rule 403 of the Federal Rules of Evidence to exclude EEOC determinations, provided it does not misuse that Rule "in such a way that would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)(C)." <u>Cortes v.</u>

---

[3]By an Order entered on December 30, 2008, United States Magistrate Judge Linda R. Anderson granted the Motion of the MTC in Limine to exclude the EEOC Letter of Determination. Having reviewed Order, the Court agrees with the analysis conducted and conclusion reached by Judge Anderson. The Court adds the following discussion in support of Judge Anderson's Order.

<u>Maxus Exploration Co.</u>, 977 F.2d 195, 201–02 (5th Cir. 1992) (alterations in original) (citations omitted).

Under Rule 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. Having reviewed the EEOC Determination in light of the record before it, the Court finds that the Determination should be excluded under Rule 403 as its probative value is questionable, and is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and/or the potential for misleading the jury.

For example, with regard to the insubordination/threatening his supervisor charge, the EEOC investigator determined:

> [T]hat the evidence obtained in the investigation established reasonable cause to believe that [Harris] was discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended, in that [he] was singled out for criticism and discharged from his position in retaliation for opposing an unlawful employment practice. The documentary evidence disclosed that [Harris] did not have a problem with his employment prior to filing a discrimination charge with the Commission against the Respondent.

<u>See</u> Pl.'s Resp. to Mot. for Final Summ. J., Ex. F. Thus, according to the investigator, Harris did not have any problems with his employment before the date on which he filed his Charge of Discrimination with the EEOC. The record, however, that

Harris had received written reprimands and had been suspended on at least three occasions, the most recent occasion being less than one month before he filed his Charge of Discrimination, for using obscene or abusive language, insubordination, and/or threatening or coercing employees, supervisors, or business invitees of a state agency or office.  <u>See</u> Mot. for Final Summ. J., Ex. 9 (Pre-disciplinary Action Notice); Ex. 11 (Disciplinary Action Notice).  As the EEOC Determination fails to mention the prior acts of misconduct for which Harris was disciplined, and instead is based on a finding that he did not have any employment problems prior to filing his Charge of Discrimination, the Court finds that the jury may be confused and/or mislead regarding this issue.

Similarly, as regards the solicitation of bribes charge, the investigator found:

> Evidence disclosed that after [Harris] filed his first EEOC charge ..., a subcontractor notified the Respondent in an affidavit, dated January 28, 2005, that an employee and a co-worker had solicited kick-backs from him to ensure that the work performed passed inspection.  In his affidavit, the sub-contractor cited that the incident occurred while he was performing work on a project from December 2001 and May 2002.  The sub-contractor specifically provided the name of the employee who had solicited kick-backs from him to the Respondent but failed to name the co-worker.  The evidence disclosed that the Respondent without an investigation or corroborating evidence and only after [Harris] filed his charge concluded that [Harris] was the co-worker and discharged him from his position.  A reasonable trier of the facts would find that Respondent's decision to discharge [Harris] was more likely than not linked to his protest of a protected activity.

<u>See</u> Pl.'s Resp. to Mot. for Final Summ. J., Ex. F.  A plain reading

of the EEOC Determination suggests that the MTC first became aware of the solicitation allegations against Harris on January 28, 2005, which post-dates the date on which he received his Pre-disciplinary Action Notice, the hearing on the charges outlined in that Notice, and the date on which he was notified of his termination. The record shows, however, that Hodges first verbally apprised Johnson of the solicitation allegations in September of 2004, and that Hodges submitted a notarized statement regarding the solicitation allegations on November 30, 2004. See Mot. for Summ. J.], Ex. 1 (Johnson Aff.), at ¶¶ 8-13; Ex. 2 (Hodges's Statement). As the EEOC Determination fails to mention that the MTC had received notice of the solicitation allegations prior to the date on which Harris was terminated, but instead is presumably based on a finding that the MTC did not have such information until Harris was terminated, the Court again finds that the jury may be confused and/or mislead regarding this issue, and that the MTC would be prejudiced by the admission of the EEOC Determination. For these reasons, the Court finds that the EEOC Determination should be excluded from evidence under Rule 403.

The Court, having considered the record in this case, finds that Harris has failed to carry his burden of producing substantial evidence of pretext in order to rebut each of the nondiscriminatory reasons articulated by the MTC for his termination. Accordingly, the Court finds that the MTC is entitled to summary judgment on

Harris's Title VII retaliation.


## IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant for Final Summary Judgment [Docket No. 53] is hereby granted.  A Final Judgment dismissing this case with prejudice shall be entered this day.

IT IS FURTHER ORDERED that all remaining pending motions in this case are hereby dismissed as moot.

SO ORDERED this the 30th day of December, 2008.


s/William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE